IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ANGELA GOODWATER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) <br> _____) | CIVIL ACTION NO. 0:05-3480-JFA-BM <br><br> **REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied continued disability benefits after January 1999. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 26, 1993 due to Lupus and other ailments. (R.p. 73). On August 27, 1994, Plaintiff was found to be entitled to an award of benefits commencing May 5, 1993 due to a combination of Systemic Lupus Erythematosus[1] with positive ANA[2] results, central nervous system

---

[1] Systemic Lupus Erythematosus is an "inflammatory connective tissue disorder." See Merck Manual of Diagnosis and Treatment (16th Ed. 1992) (Attached), available on Teton Viewer: STAT!REF Medical Reference (Spring 2001) CD-ROM.

[2] Antinuclear antibodies (ANA) is a group of antibodies that react against normal components of the cell nucleus. These antibodies are present in a variety of immunologic diseases, including systemic lupus erythematosus. Tests for ANAs are used in the diagnosis and management of autoimmune diseases. See Taber's Cyclopedic Medical Dictionary (Taber's) (20th ed. 2005) available on Stat!Ref Library CD-ROM (Second Qtr. 2006).



involvement, and seizures. (R.pp. 146-154). However, Plaintiff was subsequently notified on January 15, 1999 that, due to medical improvement, she was no longer disabled effective January 1999, and that her benefits would therefore cease in March 1999. (R.pp. 155, 157-159). Plaintiff requested a hearing on this issue before a Hearing Officer (HO), which was held on May 5, 1999. (R.pp. 186-202). The HO thereafter issued a decision on May 17, 1999 in which he found that there had been medical improvement in Plaintiff's impairments such that she now had the residual functional capacity to engage in a full range of sedentary work, and was therefore no longer disabled. (R.pp. 200-205).

Plaintiff then requested a hearing before an administrative law judge (ALJ), which was held on November 9, 1999. (R.pp. 23-33). The ALJ thereafter denied Plaintiff's claims in a decision issued February 1, 2001. (R.pp. 384-391). However, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings; (R.pp. 395-399); following which a subsequent administrative hearing was held on June 25, 2002. (R.pp. 34-51). The ALJ then again denied Plaintiff's claims in a decision issued February 24, 2003. (R.pp. 17-22). This time, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 9-11).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for a continuing award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found to no longer be disabled effective January 1999.



**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was forty-two (42) years old in January 1999, the date her disability was determined to have ceased, has three years of college with past relevant work experience as a police dispatcher. (R.pp. 73, 155, 501). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful

3



activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further, even where a disability determination has been made, as was the case here, Plaintiff's entitlement to disability benefits will be found to have ceased if the evidence shows that medical improvement relating to her ability to work as occurred, and that she is currently able to engage in substantial gainful activity. 20 C.F.R. § 404.1594(a) and (b). The term "medical improvement" is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that the claimant was disabled. 20 C.F.R. § 404.1594(b)(1)(I).[3]

After review of the evidence and testimony in the case, the ALJ determined that the evidence established that there had been medical improvement in the Plaintiff's condition since August 27, 1994 such that by January 1, 1999 Plaintiff had the residual functional capacity to perform a significant range of sedentary work[4], and that her entitlement to DIB and SSI therefore ended effective March 31, 2000, the end of the second calendar month after the month in which the disability ceased. (R.pp. 21-22). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly consider new evidence, by failing to reconcile the fact that the state agency medical opinions upon which he relied considered only Plaintiff's seizure disorder and did not consider her additional impairments, by failing to properly consider the effects of Plaintiff's

---

[3] The most recent favorable medical decision that the Plaintiff was disabled was August 27, 1994. Defendant's Brief, p. 5. see (R.pp. 146-154).

[4] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

4



numerous medications upon her ability to work, by improperly discounting the credibility of witness testimony, and by failing to "explore all the relevant facts when Plaintiff [was] unrepresented by counsel." However, after careful review and consideration of the record in this case and the arguments of the parties, the undersigned finds and concludes that the decision to deny benefits after March 2000 is supported by substantial evidence as that term is defined in the relevant caselaw, and that the decision of the Commissioner should therefore be affirmed.

At the time of the original decision in August 1994, Plaintiff was found to be disabled because her severe impairments, including Systemic Lupus Erythematosus, with positive ANA results and central nervous system involvement and seizures, met the criteria for Listing 10.04 of the Listings of Impairments.[5] (R.p. 153). However, even though a favorable disability determination was made as of that date, continued entitlement to Social Security disability benefits is a matter that is subject to periodic review. 20 C.F.R. § 404.1594(a). It was as a result of this continuing disability review that the Agency notified the Plaintiff on January 15, 1999 that, due to medical improvement, she was no longer disabled effective January 1999, which in turn led to the appeals history previously cited and culminating in the ALJ's decision of February 24, 2003. Further, even though the decision of the Commissioner is dated February 24, 2003, the issue before this Court is whether the record provides substantial evidence to support the ALJ's determination that Plaintiff's condition had improved such that her disability had ceased as of January 1999, not what her condition was on the

---

[5] In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).

5



date of the decision.[6] See Acquiescence Ruling (AR) 92-2(6), 1992 WL 425419, at *2 (SSA 1992) [In an appeal of a cessation determination, "the [Commissioner] considers what the [Plaintiff's] condition was at the time of the cessation determination, not the claimant's condition at the time of the disability hearing/reconsideration determination, ALJ decision or Appeals Council decision."]. The record contains substantial evidence to support the ALJ's determination that Plaintiff's medical condition had improved such that she was no longer entitled to disability benefits as of January 1999.

The record reflects that Dr. Frank Harper (Plaintiff's treating physician), who had opined prior to the initial decision that Plaintiff was disabled due to her seizure activity associated with Systemic Lupus; (R.p. 324); consistently found on examination following Plaintiff's disability determination of August 1994 that her condition was improving. In June 1997, Dr. Harper noted that Plaintiff had had only one minor seizure in the preceding four months, and that Plaintiff's seizures were satisfactorily controlled with medication. (R.p. 362); see also (R.pp. 359-361). Dr. Harper further opined at that time that Plaintiff was medically stable without any physical signs of an active disease. Progress notes from East Cooper Internal Medicine dated September 17, 1997 also indicated that Plaintiff's seizures were stable. (R.p. 336). Four months after her June 1997 visit, Dr. Harper noted in October 1997 that Plaintiff's preceding four months had again been "uneventful", and that Plaintiff's Lupus was probably in remission. Dr. Harper noted that Plaintiff's fibromyalgia like syndrome was a more persistent problem than her Lupus at that time, but that even this condition was stable on medication. (R.p. 363). Subsequent treatment notes from East Cooper Internal Medicine from December 1997 through January 1998 reflect that Plaintiff's seizures were "non-recurrent".

---

[6]Indeed, the record reflects that Plaintiff filed a second application for disability, which resulted in her being found to have again become disabled as of February 25, 2003. See Attachments to Plaintiff's Brief.



(R.pp. 336-337).

By February 1998, Dr. Harper noted that Plaintiff was not having any recurrence of her Lupus problems and had not any recurrent seizures. An extremity exam revealed no signs of active joint inflamation, although Plaintiff did have "trigger points" in some muscle areas. Dr. Harper believed Plaintiff had fibromyalgia with some depression, for which he indicated she needed to continue taking Prozac on a regular basis. (R.p. 364). In June 1998, Dr. Harper opined that Plaintiff was "reasonably stable", that she had had a fairly good interval since he had last seen her, and that she was taking medications for headaches. Physical examination was generally unremarkable except for "slightly puffy" hands. (R.p. 365).

On May 6, 1998, Plaintiff reported to neurologist Dr. John Plyler that she had not had any seizures and was doing well on her medication regimen. (R.p. 341). Plaintiff did go to the emergency room on August 17, 1998 complaining of recent seizure activity, but it was noted that Plaintiff was not taking her anticonvulsant medication properly at that time. (R.pp. 333, 337). When Plaintiff subsequently went back to Dr. Plyler for a follow-up on September 16, 1998, she reported no further seizures. (R.p. 342).

On January 13, 1999, state agency medical consultant Dr. T.K. Baker reviewed Plaintiff's records and completed a physical residual functional capacity assessment in which he concluded that Plaintiff had no exertional limitations and could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. Dr. Baker further found that Plaintiff should avoid all exposure to hazards such as machinery and heights, but that she had no manipulative, visual, or communicative limitations. (R.pp. 369-375). A second state agency medical consultant, Dr. Richard Weymouth, opined on April 1, 1999 that Plaintiff should

7



avoid concentrated exposures to hazards such as machinery and heights, but otherwise had no exertional, postural, manipulative, visual, or communicative limitations. (R.pp. 376-383).

The record reflects that, later, Plaintiff was treated for various complaints by Dr. Richard Mills from January 2001 through March 2001. Dr. Mills noted that Plaintiff had had no seizure activity and no acute changes with regard to her Lupus. Dr. Mills' records also reflect that Plaintiff's headaches were stable with treatment, while medication helped her complaints of pain. He did note, however, that Plaintiff had diabetes, which was poorly controlled. (R.pp. 402-407). Dr. Mills referred Plaintiff to Dr. David Wenzel on March 21, 2001, for evaluation of complaints of paresthesias[7] of her left hand and feet, who found on examination that Plaintiff had 5/5 strength throughout all major muscle groups, that her muscle tone was appropriate, and that there was no demonstrable sensory loss except for in Plaintiff's great toes bilaterally and near the distal arches. Plaintiff reported to Dr. Wenzel that her Lupus was well controlled with medication and that she had not had a seizure for two years. (R.pp. 417-419).

A subsequent nerve conduction study performed by Dr. Wenzel on April 6, 2001 indicated Plaintiff might have mild peripheral polyneuropathy effecting her lower extremities. (R.p. 421). Plaintiff's neuropathic symptoms were treated with Neurotin, an anticonvulsant used to treat neuralgia, which helped her neuropathic symptoms but left her somewhat sedated. Plaintiff's headaches were satisfactorily controlled with Maxalt, a medicine used to treat migraine headaches. (R.pp. 423-424).

By December 2001, Dr. Wenzel noted that Plaintiff was not taking any medication

---

[7]An abnormal touch sensation such as burning, prickling, or formication, often in the absence of external stimulus. Dorland's Illustrated Medical Dictionary, (28th ed. 1994), p. 1234.

8



for her Lupus, and an examination revealed 5/5 muscle strength throughout both legs with moderate tenderness in the lumbosacral paraspinous region. Plaintiff did complain of back and leg pain, and an MRI of her lumbar spine showed mild degenerative disc disease. (R.p. 425-427). Dr. Wenzel recommended physical therapy, and treatment notes from January 2002 indicate that physical therapy was "somewhat helpful" in alleviating Plaintiff's back and leg pain. (R.p. 430). Dr. Wenzel also noted that Plaintiff never filled her prescription for Neurotin as ordered on her December 2001 visit. When Plaintiff did complain of seizure activities ten days prior to her office visit, Dr. Wenzel noted that it sounded as though Plaintiff had been non-compliant. (R.p. 430). See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) [Claimant's failure to follow prescribed medical treatment inconsistent with complaints of disabling seizures]. Dr. Wenzel also noted that Plaintiff's back pain had improved, and that no further intervention was needed for that problem. Id.

Plaintiff underwent a psychological evaluation on February 12, 2002 by Dr. Barton Saylor, who noted that Plaintiff had been working in retail prior to November 2001, but that she had found it difficult due to the physical stressors of her job which caused pain in her legs and back. Dr. Saylor assigned Plaintiff a full score I.Q. of 80, placing her in the low average range of intellectual functioning, and concluded that her physical limitations would likely make it difficult for her to do anything but in a very individually designed work environment, and that her physical discomfort would also make it difficult for her to operate efficiently in an "intellectual manner". (R.pp. 441-444). In a medical source statement (mental) completed February 13, 2002, Dr. Saylor opined that Plaintiff had no limitations in her ability to understand and remember short, simple instructions; slight limitations in her ability to carry out simple, short instructions; slight limitations in her ability to understand and remember detailed instructions; moderate limitations in her ability to carry out

9



detailed instructions; and slight limitations in her ability to make judgments on simple work-related decisions; slight limitations in interacting appropriately with the public; slight limitations in interacting appropriately with supervisors and co-workers; moderate limitations in responding appropriately to work pressure in a usual work setting; and slight limitations in responding appropriately to changes in a routine work setting. He concluded that Plaintiff had the capacity for performing simple tasks and reasoning, but that she might find more complicated problems or multiple simultaneous demands very frustrating, with her limitations due primarily to physical health problems with minimal contribution from depression secondary to chronic health problems. (R.pp. 445-446).

On April 24, 2002, Dr. Mills completed a medical source statement (physical) in which he opined that Plaintiff could perform the lifting requirements for sedentary work, stand less than two hours in an eight hour work day because of neuropathy and pain, but that she could alternate between sitting and standing to relieve discomfort; and that she could never climb, balance, kneel, crouch, crawl, or stoop. He also opined that Plaintiff was limited in manipulative functions to occasional reaching, handling, fingering, and feeling; but that she had unlimited visual and communicative functions. She was limited environmentally due to her seizures and neuropathy. (R.pp. 461-464).

After review of these medical records and consideration of the testimony at the hearing, the ALJ determined that there had been medical improvement in Plaintiff's condition since August 27, 1994, the comparison point, that that medical improvement was related to her ability to work, and that commencing January 1, 1999 she had the residual functional capacity to perform sedentary work reduced to a range of unskilled work in a low stress environment. (R.p. 21). The



records of Dr. Harper, Dr. Plyler and Dr. Saylor provide substantial evidence to support this determination; see Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance of treating physician's opinion]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physician may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. See Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. The ALJ specifically notes in his decision how the records of both Dr. Harper and Dr. Plyler show that Plaintiff's Lupus and seizure disorder were stable with treatment with no signs of any significant systemic involvement, as well as that Dr. Saylor's assessment that Plaintiff could understand and remember short, simple instructions and would have slight difficulty in interacting appropriately with the public, supervisors, and co-workers, limited her to unskilled, low stress work. (R.pp. 18-20). In arguing her case for disability, Plaintiff notes that this same ALJ found Plaintiff's impairments to be disabling only one day after the date of this unfavorable decision.[8] However, as has previously been stated, the issue before the ALJ at that time (as well as before this Court) is not whether Plaintiff's impairments may have later re-achieved disabling severity, but whether substantial evidence supports the decision that her impairments were not of disabling severity as of January 1999.

Plaintiff argues that the ALJ conducted an improper credibility analysis in reaching his decision. However, the undersigned does not find any reversible error in this aspect of the decision. The ALJ noted Plaintiff's testimony that she suffered from severe and chronic pain which

---

[8]Plaintiff filed her second claim for benefits apparently at the suggestion of the ALJ. (R.p. 48).



(she alleged) rendered her unable to perform many daily activities, and that she also alleged severe depression, fatigue, and poor memory. (R.p. 19); see (R.pp. 39-40). In deciding that this testimony and that of Plaintiff's husband with respect to the severity of her condition was not credible, the ALJ found that the medical evidence did not corroborate her allegations, that there was no evidence of any emergency treatment activity or severe disabling headaches, that Plaintiff had in fact denied having any seizures since August 1998, that no physician had stated that Plaintiff could not work due to any physical or mental condition during the relevant time period or that Plaintiff was significantly limited by a seizure condition, that there was no evidence of any significant systemic involvement or that Plaintiff had had frequent flare-ups of symptoms of Lupus other than generalized complaints of muscle aches and joint pain, that her symptoms of depression were controlled with Prozac, and that a psychological evaluation found that she would have no limitation in understanding and remembering short, simple instructions with slight difficulty in interacting appropriately with the public, supervisors, and co-workers. (R.pp. 18-20). Plaintiff herself testified that she engaged in such activities as walking around a track, doing the laundry, attending church, driving, and even looking for work. (R.pp. 29, 187-188). *Cf.* Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) [record of contemplating work indicates claimant did not view his pain as disabling].

      The ALJ concluded on this record that the medical evidence failed to show severe symptoms of any condition which would prevent the minimal physical exertion required of sedentary work reduced by a limitation to unskilled, low stress work as of January 1999. (R.p. 19). Again, there is substantial evidence to support this finding. See Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991) [denial of benefits affirmed where physicians who examined claimant and heard all of his complaints failed to give an opinion that he was totally and permanently disabled]; Cruse v. Bowen,



867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) [simply because working might cause discomfort does not mandate a finding of disability]; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996) ["We decline claimant's invitation to adopt a rule requiring an ALJ to make a specific written finding on each witness's credibility...."]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Plaintiff's argument that reversal is warranted because the ALJ did not specifically mention Plaintiff's medications in his opinion or the effect those medications might have on her ability to stay alert or concentrate is without merit. There is no record of any physician ever opining that Plaintiff's side effects from medications rendered her unable to work. Further, while Plaintiff is correct that the ALJ did not specifically reference *limitations* caused by medications in his opinion, he did discuss how Plaintiff's medications *improved* her condition, noting how Prozac kept her depression under control as well as how other medications kept her seizures and complaints of headaches well controlled. (R.pp. 18-20). The ALJ also specifically found that Plaintiff's mental condition might result in her having moderate difficulties in maintaining concentration, persistence,



and pace, which is why he specifically limited her to unskilled, low stress work. These limitations adequately and appropriately account for any difficulties Plaintiff would have in maintaining concentration and pace at work. *Cf.* Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the court concluded the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress]. Hence, the ALJ's failure to specifically mention whether medications played a role in Plaintiff's deficiencies in this area are not grounds for reversal of the decision. Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987) [an arguable deficiency in opinion writing is not cause for reversing the Commissioner].

Finally, Plaintiff's complaint that the decision should be reversed and remanded because she was unrepresented, and the ALJ did not in turn "scrupulously and conscientiously" explore all of the relevant facts, is without merit. Plaintiff argues that the transcript of her first hearing shows that she had difficulty understanding the judge's explanations regarding the nature of the proceedings and that the ALJ's questioning of her did not "constitute a fair hearing." See (R.pp. 27-31). Plaintiff further argues that her remand hearing was also not conducted fairly. See (R.pp. 34-51). See Lashley v. Secretary of HHS, 708 F.2d 1048, 1051-1052 (6th Cir. 1983) ["[T]he administrative law judge is under a special duty to develop the record when the claimant appears without counsel."]. However, the record reflects that at both hearings Plaintiff was specifically advised that she was entitled to an attorney, and that the ALJ would reschedule the case if she would



like to pursue representation. (R.pp. 26, 36-37). On both occasions, Plaintiff indicated she wanted to proceed with the hearing. Id. The transcripts of both hearings reflect that the ALJ then took testimony, and also gave Plaintiff an opportunity to question the vocational expert at the second hearing (there was no vocational expert taken at the first hearing). See generally, (R.pp. 23-51). Plaintiff's argument that her hearing testimony would have been handled differently and would have been more favorable to her if she had had an attorney present is sheer speculation. While an attorney probably would have gone into more detailed and precise questioning of the vocational expert, there is no indication in these transcripts that Plaintiff was treated unfairly, or was not given every opportunity to present her case. Holden v. Califano, 641 F.2d 405, 408 (6th Cir. 1981) ["While the absence of counsel might cause us to scrutinize the record with care, it alone is not a grounds for reversal or remand."].

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act



during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

December 12,   2006

16

