IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | | |
|---|---|---|
| Angela Goodwater, | ) | |
| | ) | C/A No. 0:05-3480-JFA-BM |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Jo Anne B. Barnhart, | ) | **ORDER** |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 83.VII.02.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. Mathews v. Weber, 423 U.S. 261 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the Recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The plaintiff, Angela Goodwater, brings this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for continued disability benefits after January 1999.

I.    Procedural History

The plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 26, 1993, alleging disability since May 5, 1993, from systemic lupus, seizures, depression, joint pain, and memory, concentration, and vision problems.  Her claim was denied initially and on reconsideration.  On August 27, 1994, the Administrative Law Judge (ALJ) determined that plaintiff was disabled and entitled to benefits commencing May 5, 1993 due to a combination of "severe impairments for systemic lupus erythematosus, with positive ANA results and central nervous system involvement and seizures."

Following a continuing disability review, the plaintiff was notified on January 15, 1999 that due to medical improvement she was no longer disabled, effective January 1999, and that that her benefits would cease in March 1999.  Plaintiff requested a disability hearing before a Hearing Officer (HO).  The hearing was held on May 5, 1999, and the HO issued a decision on May 17, 1999 that plaintiff was no longer disabled because there had been medical improvement in plaintiff's impairments.  The HO determined that plaintiff had the residual functional capacity to engage in a full range of sedentary work.

Plaintiff thereafter filed a request for a hearing before an ALJ, which was held on November 9, 1999. The ALJ issued a decision on February 1, 2001 concluding that as of January 1999 plaintiff was no longer disabled due to medical improvement and that plaintiff had the capacity to engage in a wide range of sedentary work. On November 16, 2001, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings.

A subsequent administrative hearing was held on June 25, 2002. The ALJ again concluded in a decision on February 24, 2003 that there had been medical improvement in plaintiff's condition and that disability had ceased in January 1999. The ALJ reduced plaintiff's residual functional capacity to a range of unskilled, low stress, sedentary work. Upon denial by the Appeal's Council on October 28, 2005 of the plaintiff's request for review of the ALJ's February 24, 2003 decision, the ALJ's decision became the final decision of the Commissioner. Plaintiff thereafter filed this action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner.

The United States Magistrate Judge to whom this matter was referred filed a comprehensive Report on December 12, 2006. The Magistrate Judge recommended that the Commissioner's decision be affirmed.

The parties were advised of their right to file specific written objections to the Magistrate's Report. The plaintiff filed her objections on December 18, 2006. The Commissioner has not responded to those objections; however, the matter now appears ripe for review.

3

II.     Standard of Review

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's findings and (2) whether the findings were reached through application of the correct legal standard.  Craig v. Chater, 76 F.3d 585, 589 (1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); it is "more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F. 2d 541, 543 (4th Cir. 1964).  This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  Vitek v. Finch, 438 F.2d 1157, 1157 (4th Cir. 1971).  "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by "'substantial evidence.'"   Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) (citation omitted).

"From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.   The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound

foundation for the [Commissioner's] findings, and that his conclusion is rational." <u>Vitek</u>, 438 F.2d at 1157-58.

III.    <u>Discussion</u>

   A.    <u>Applicable Law</u>

An individual is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1); § 1382c(a)(3)(A). In general, the law requires the Commissioner to conduct continuing disability reviews to determine whether recipients of disability benefits continue to meet the eligibility requirements for disability benefits. 42 U.S.C. § 421(i)(1) (all disability beneficiaries); § 1382c(a)(3)(H) (specific SSI disability recipients). Subject to specific exceptions, disability benefits will cease only if there has been (1) any medical improvement in the individual's impairment or combination of impairments that is related to the ability to work, and (2) the individual is able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1)(A); § 1382c(a)(4)(A)(i).

"Medical improvement is any decrease in the medical severity of . . . impairment(s) which was present at the time of the most recent favorable medical decision that [an individual was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1); 20 C.F.R. § 416.994(b)(1)(i). A decrease in medical severity of an impairment(s) must be based on an improvement in signs, symptoms, or laboratory findings. § 404.1594(b)(1); § 416.994(b)(1)(i). If an increase in residual functional

capacity (i.e., functional capacity to do basic work activities) based on previously existing impairments accompanies a decrease in medical severity, the medical improvement is related to the ability to work. § 404.1594(c)(2); § 416.994(b)(1)(iii). In addition, medical improvement will be found to be related to work where the severity of an impairment(s) no longer meets or equals the same listing relied upon in the most recent favorable decision. § 404.1594(c)(3)(i); § 416.994 (b)(2)(iv)(A).

Even if there is medical improvement, disability will not be found to have ended unless (1) an individual does not have a current impairment or combination of impairments that is severe or (2) an individual with severe impairment(s) is able to engage in substantial gainful activity. § 404.1594(b)(3), (f)(6); § 416.994(b)(1)(iii), (5)(v). An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities (e.g., sitting, standing, seeing, understanding). § 404.1521(a)-(b); §416.921(a)-(b). If an individual is not precluded from engaging in substantial gainful activity on the basis of medical considerations alone, an individual's residual functional capacity based on current impairments is used to determine whether an individual is able to engage in substantial gainful activity. § 404.1594(b)(5); § 416.994(b)(1)(v). An individual will be found to have the ability to engage in substantial gainful activity if: (1) considering residual functional capacity, the individual is able to perform past relevant work or (2) considering residual functional capacity and vocational factors (such as age, education, and past work experience), the individual can perform other work that exists in significant numbers in

the national economy.    §§ 404.1594(f)(7)-(8),  .1560(c);  §§ 416.994(b)(5)(vi)-(vii), .960(c).

B.    ALJ's Findings

On February 24, 2003, the ALJ made the following findings of fact:

1.    The claimant was found to be disabled within the meaning of the Social Security Act, beginning May 5, 1993, due to epilepsy.

2.    The claimant has an impairment, seizure disorder, which is "severe" within the meaning of the Social Security Act; however, the condition does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

3.    The claimant's allegations regarding her limitations are not entirely credible for the reasons set forth in the body of the decision.

4.    The evidence establishes that there has been medical improvement in the claimant's condition since August 27, 1994, the comparison point decision, which is related to her ability to work.

5.    The ALJ carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

6.    Commencing January 1, 1999, the claimant had the residual functional capacity to lift up to 10 pounds in a job with low stress.

7.    The claimant's work as nursing assistant require lifting in excess of 10 pounds; therefore, she could not return to past relevant work (20 CFR §§ 404.1565 and 416.965).

8.    The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

9.    Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.   Examples of such jobs include work as surveillance

7

systems monitor (1500 in SC and 100,000 in US), cashier (600,000 in SC and 3 million in US).

10.    The claimant's disability ceased on January 1, 1999 (20 CFR §§ 404.1520(f) and 416.920)(f)).

The plaintiff argues that her disability benefits were erroneously terminated as a result of the ALJ's failure to:

1.    Scrupulously and conscientiously explore all of the relevant facts when plaintiff was unrepresented by counsel;

2.    Properly consider new evidence;

3.    Reconcile the fact that the state agency medical opinions upon which he relied considered only plaintiff's seizure disorder in determining her residual functional capacity and did not consider her additional impairments of systemic lupus erythematosus, fibromyalgia, headaches, diabetes mellitus with resulting neuropathy and pain;

4.    Give weight to witness testimony and conduct a proper credibility analysis; and

5.    Properly consider the effects of plaintiff's numerous medications upon her ability to perform sustained work on a regular and continuous basis.

C.    Magistrate's Report & Recommendation

The Magistrate Judge concluded that substantial evidence supported the ALJ's determination that plaintiff was not disabled as of January 1999 and that the ALJ applied the correct legal standards. The Magistrate Judge, therefore, recommends that the Commissioner's decision be affirmed.

D.    Plaintiff's Objections to Magistrate's Report

Plaintiff appears to make six objections to the Magistrate's Report. Each of these objections is discussed in turn.

1.    Plaintiff claims the Magistrate Judge erred in failing to consider plaintiff's subsequent determination of disability which constituted new and material evidence and required remand.

As noted above, the ALJ issued a decision on February 24, 2003 that plaintiff was no longer disabled effective January 1999, the date of the initial cessation determination. On November 15, 2004, the same ALJ found that the plaintiff had been disabled since February 25, 2003.   On October 28, 2005, the Appeals Council denied review of the ALJ's February 24, 2003 decision—the decision before this Court.    The Appeals Council's denial of review notice provided:

> In taking our action, we are aware that you were found to be entitled to a new period of disability beginning February 25, 2003, in a hearing decision dated November 15, 2004 from another [ALJ].  We do not necessarily agree with the finding of disability in the new hearing decision.  However, we concluded that there is no basis under the applicable regulations to reopen this later decision.

After reviewing the evidence, the Magistrate Judge concluded that substantial evidence supported the ALJ's finding of medical improvement which was related to plaintiff's ability to work, and that, as of January 1999, plaintiff had the residual functional capacity to perform sedentary work reduced to a range of unskilled work in a low stress environment.   The Magistrate Judge found that the ALJ had not failed to properly consider new evidence because the point of time for assessing plaintiff's condition was January 1999.  The plaintiff argues that the subsequent determination of disability constituted new and material evidence that required remand.  More specifically, the plaintiff argues that the ALJ's subsequent finding of disability is relevant to the initial determination of cessation when based on the same medical records and facts.  The

plaintiff asserts that because the subsequent onset date of disability came in close proximity to the earlier denial, that the evidence is new and material and requires remand.

Plaintiff's arguments are without merit. First, the Magistrate Judge did not err by finding that the ALJ must consider plaintiff's conditions at the time of the initial cessation determination. Disability determinations must be made based on "all the evidence available in the individual's case file, including new evidence concerning the individual's prior or <u>current</u> condition." 42 U.S.C. § 423(f)(4); §1382c(a)(4)(ii) (emphasis provided). Although the Fourth Circuit has not directly ruled on the meaning of "current" in the context of disability cessation determinations,[1] the Social Security Administration (SSA) interprets "current" as relating to the claimant's condition at the initial determination of cessation, not the ALJ's hearing or reconsideration determination:

> In making any initial determination that a claimant's disability has ceased, SSA considers the claimant's condition at the time SSA is making the initial determination. In deciding the appeal of that cessation determination, the Secretary considers what the claimant's condition was at the time of the cessation determination, not the claimant's condition at the time of the disability hearing/reconsideration determination, ALJ decision or Appeals Council decision. However, if the evidence indicates that the claimant's condition may have again become disabling subsequent to the cessation of his or her disability or that he or she has a new impairment, the adjudicator solicits a new application.

Social Security Acquiescence Ruling 92-2(6) (March 17, 1992). As this issue has not been decided by the Fourth Circuit, the court defers to the SSA's interpretation, and finds

---

[1] In an unpublished opinion, <u>Lever v. Barnhart</u>, 2003 WL 223010801 (4th Cir. Oct. 8, 2003), aff'g CA-01-3246 (D. S.C. 2002), the Fourth Circuit affirmed a decision by this court that rejected the holding of <u>Difford v. Secretary of Health & Human Services</u>, 910 F.2d 1316, 1319-20 (6th Cir. 1990). <u>Difford</u> held that adjudication of disability must occur through the time of the ALJ's hearing. <u>Id.</u> However, this Court adhered to the SSA's interpretation of "current" as referring to time of the cessation determination.

that the Magistrate Judge did not err in evaluating plaintiff's condition at the time of the initial cessation determination in January 1999.

Plaintiff's argument for remand of new and material evidence likewise fails. A court may remand a case to the Commissioner pursuant to 42 U.S.C. §405(g), "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In determining whether to grant review, Social Security regulations require the Appeals Council to consider (1) new and (2) material evidence (3) "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970; Wilkins v. Secretary of Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991). "Evidence is new . . . if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96.

Plaintiff argues that the subsequent finding of disability commencing February 25, 2003 is new and material to the ALJ's decision on February 24, 2003 which found that plaintiff was not disabled on January 1999. Plaintiff asserts that the finding of disability commencing February 25, 2003 constitutes new and material evidence because the determinations were made in close proximity and based upon the same records and evidence.

The plaintiff relies on Bradley v. Barnhart, 463 F. Supp. 2d 577 (S.D. W.Va. 2006), in arguing that an onset date in close proximity with a previous denial constitutes new and material evidence. Contrary to plaintiff's interpretation, the Bradley court did

11

not hold that close onset and denial dates require remand.  The court interpreted a prior case, <u>Reichard v. Barnhart</u>, 285 F. Supp. 2d 728 (S.D. W.Va. 2003), as standing "for the proposition that an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthier of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome of the claim."  463 F. Supp. 2d at 581.  The court then applied the <u>Wilkins</u> standard for new and material evidence in deciding whether to remand.  <u>Id</u>.  This court rejects plaintiff's suggestion that close proximity requires remand.  Furthermore, the court finds <u>Bradley</u> distinguishable as well on the facts because it involved an individual whose initial application for disability had been denied—not the termination of disability benefits.  <u>Id.</u> at 578-79.  Additionally, as noted above, in the instant case, the Appeal's Council reviewed the subsequent favorable determination and found that it did not warrant a review of the prior denial; whereas, there apparently was no such similar review in <u>Bradley</u>.

The plaintiff also appears to argue that the ALJ's subsequent favorable determination is new and material because it is based on the same records as the prior decision upholding termination of benefits.  However, this argument mischaracterizes the ALJ's findings.  The ALJ's February 24, 2003 cessation determination reveals that the ALJ evaluated all of the evidence, including the evidence after the date of initial determination, in evaluating the plaintiff's conditions that existed at the time of the initial cessation determination on January 1999; however, in finding that the plaintiff was no longer disabled, the ALJ noted that the "new evidence" submitted by the plaintiff did not support a finding of deterioration of these conditions.  On the other hand, the ALJ's

12

subsequent finding of disability on November 15, 2004 was based in part on new conditions that developed after January 1999 (e.g., diabetes in November of 2000, early signs of peripheral neuropathy in March 2001, mild degenerative disc disease in December 2001) and "in particular, [on] the persuasive" reports made by two physicians in 2003 and 2004 that asserted plaintiff's disability.    Thus, contrary to plaintiff's assertions, the "same evidence" does not support a finding of disability at the relevant point in time, January 1999.    A review of the medical reports provides substantial evidence supporting the ALJ's finding that the new evidence submitted by the plaintiff did not show a deterioration of plaintiff's conditions that existed on and before January 1999.

After a review of the record, the court finds that substantial evidence supports the Appeals Council's decision not to review the ALJ's February 24, 2003 decision.  Because the subsequent finding of disability was based upon evidence of plaintiff's impairments after the relevant point in time and there is nothing in the evidence relating to plaintiff's impairments before January 1999, there is no "reasonable possibility" that the subsequent favorable determination would have resulted in a different outcome.    Therefore, the court finds that the subsequent determination of disability was not material and as such does not require remand.

2.   Plaintiff claims the Magistrate Judge erred in failing to find that the ALJ did not "scrupulously and conscientiously" explore all relevant facts where plaintiff proceeded pro se and that the hearing was conducted in an unfair manner.

A disability claimant is entitled to a full and fair hearing. Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980). Good cause sufficient to remand under 42 U.S.C. §405(g) may exist if a claimant is not provided a full and fair hearing. Id. However, absence of counsel does "not by itself [indicate] that a hearing was not full and fair"; remand is proper where lack of representation results in "clear prejudice or unfairness" to the claimant. Id. at 27-28. In pro se cases, an ALJ has a duty to "'scrupulously and conscientiously . . . probe into, inquire of, and explore for all the relevant facts.'" Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) (quoting Gold v. Secretary of HEW, 463 F.2d 38,43 (2d Cir. 1972)). An ALJ's failure to fulfill this duty to pro se claimants may result in remand where the absence of counsel results in prejudice to the claimant. Id.

The Magistrate Judge concluded that the hearing was fair and that the ALJ fulfilled the heightened duty because the ALJ advised the plaintiff of her right to obtain counsel, offered to reschedule the hearing, took testimony, and provided plaintiff the opportunity to question a vocational expert. The Magistrate Judge rejected, as "mere speculation," the plaintiff's argument that the hearing would have been handled differently if plaintiff had been represented by counsel. The plaintiff argues that the only difference between the prior hearings, resulting in unfavorable determinations, and the most recent hearing, resulting in a favorable determination, was the fact that plaintiff was represented by counsel: "The very same ALJ, used the very same evidence, to determine that the very

same claimant was actually disabled as of one day after the date he issued his prior decision in which he determined that she was 'not disabled.'"

Plaintiff's argument is without merit.  The evidence supports the Magistrate Judge's conclusion that the hearing was not unfair or prejudicial to the plaintiff.  In addition to the Magistrate Judge's findings above, the hearing transcript provides further support that the ALJ fulfilled the duty to inquire of and explore all relevant facts.  For example, the ALJ prompted the plaintiff's husband to testify, focused the plaintiff's testimony on relevant matters, inquired into plaintiff's former job duties and the reasons plaintiff stopped working, assisted plaintiff in asking the vocational expert a hypothetical question, and sought clarification of the plaintiff's proposed limitation due to medication side effects.  Therefore, the court finds that the ALJ fulfilled the heightened duty required when a claimant appears without counsel.

Plaintiff's argument that the outcome of the hearing was different solely because of lack of counsel is likewise without merit.  First, plaintiff's argument ignores the relevant time period for a cessation determination.  As noted above, the relevant evidence is that evidence which relates to the time before the hearing and is material to the plaintiff's current condition, that is, plaintiff's condition at the time of the initial cessation determination.  The plaintiff's subsequent favorable disability determination, by the same ALJ, was based at least in part upon evidence that showed plaintiff had developed new conditions subsequent to termination.  Therefore, the court finds that the evidence does not support the conclusion that the absence of counsel, which alone is insufficient to establish prejudice, was the outcome-determinate variable.

       3.     Plaintiff claims the Magistrate Judge erred in finding the ALJ properly evaluated plaintiff's subjective complaints.

In assessing complaints of pain and other symptoms, the ALJ must first determine whether there is objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain or other symptoms, in the amount and degree, alleged by the claimant. Craig v. Chater, 76 F.3d 585, 591, 594 (4th Cir. 1996). If there is such evidence, the ALJ must then consider the plaintiff's subjective complaints along with all of the evidence in the record. Id. Although subjective complaints of pain and other symptoms may not be discredited solely because they are not substantiated by objective evidence, "they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause" the pain or symptom. Id. at 595.

The plaintiff testified at the hearing on June 25, 2002 that she suffered from "a lot of pain" during the relevant point in time and that she was unable to complete tasks at home. During the proceeding before the HO on May 5, 1999, plaintiff testified that she suffered from fatigue and that she became "completely" tired by "any activity." She also testified that she had ongoing pain "in all muscle groups and joints"; experienced severe headaches once or twice per week that lasted three days on average; could not "do things she did in the past" because of depression; and had "difficulty with her memory at times particularly with remembering people's names." Plaintiff's husband testified at the

hearing on June 25, 2002 that plaintiff had to stop work because of pain, and that her medication caused her to be inattentive most of the time.

After discussing the status of each of the plaintiff's mental and physical impairments as of January 1999 (i.e., seizure disorder, lupus, fibromyalgia, headaches, depression, and I.Q. score of 80), the ALJ concluded that contrary to the testimony of plaintiff and her husband, the medical evidence failed to "show severe symptoms of any condition which would prevent the minimal exertion required be sedentary work." The ALJ noted that plaintiff testified that she had experienced no seizures since August 1998; suffered from severe and chronic pain; was unable to perform daily activities; and suffered from severe depression, fatigue, and poor memory. He found, however, that the severity of plaintiff's alleged symptoms were not entirely credible. The ALJ noted that the medical evidence did not support plaintiff's alleged limitations due to depression, fatigue, and poor memory; that Prozac had been prescribed for depression; the lack of emergency treatment for seizure activity or severe headaches; plaintiff's denial of seizure activity since 1998 (which was attributed to plaintiff's failure to take medication); that no physician stated that she could not work due to any physical or mental condition or that her seizure disorder significantly limited her ability to work; and that plaintiff's neurologist had reported that claimant was doing well and denied seizure activity since 1998. The ALJ also noted that the opinions of the state agency physicians supported his findings. Thus, the ALJ found that the plaintiff had the residual functional capacity to perform unskilled, low stress, sedentary work.

17

Plaintiff asserts that the ALJ failed to perform a proper credibility analysis of the plaintiff's subjective symptoms. The Magistrate Judge found that substantial evidence supported the ALJ's findings that plaintiff's conditions did not prevent the plaintiff from engaging in unskilled, low stress, sedentary work and thus concluded that there was no reversible error in the ALJ's findings.

Plaintiff first argues that the Magistrate erred in finding that the ALJ performed a proper credibility analysis. Plaintiff asserts that the Magistrate inappropriately engaged in a post hoc rationalization of the ALJ's assessment. The court rejects plaintiff's argument.

First, the objective medical evidence suggests that the plaintiff suffered from a seizure disorder, lupus, fibromyalgia, depression, lower than average I.Q., and headaches. The ALJ's decision clearly identifies and discusses the status of each of these impairments.[2]

Second, while lupus, fibromyalgia, headaches, and depression could reasonably cause the symptoms alleged by the plaintiff, substantial evidence supports the ALJ's determination that they did not cause symptoms of the severity alleged by the plaintiff. The ALJ specifically noted inconsistency between the testimony and medical evidence: "[T]he medical evidence fails to show severe symptoms of any condition which would prevent the minimal physical exertion required by sedentary work." Medical evidence may be considered in assessing the extent and severity of symptoms caused by plaintiff's

---

[2] The Court notes that while the ALJ did not explicitly state that these conditions could reasonably cause the symptoms alleged by the plaintiff, any error is harmless because substantial evidence supports the ALJ's finding that they did not cause symptoms of the severity alleged. Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming ALJ's decision to deny benefits where the result would have been the same despite the initial error in evaluating plaintiff's pain).

impairments.  Craig v. Chater, 76 F.3d 585, 591, 595 (4th Cir. 1996) (The ALJ must evaluate "not only the claimant's subjective statements about her pain, but also 'all the available evidence' . . . .").

The medical evidence cited by the ALJ included references to evaluations made by the plaintiff's neurologist and state agency physicians.  The evaluation dated September 16, 1998 by plaintiff's neurologist, Dr. Plyler, supports the ALJ's reference to the physician's finding that plaintiff was "doing well" and reported no seizures.  Specifically, Dr. Plyler's evaluation stated that plaintiff reported tolerating medication change well; no recurrence of seizures since the seizure in 1998 (plaintiff admitted she may have missed one or two doses of medication at the time of that seizure); fewer headaches; no other complaints other than personal stresses and some sleep difficulty; and that her lupus was currently stable.  The ALJ also noted that the opinions of the state agency physicians supported his findings.  The RFC assessment by Dr. Baker, a state agency physician, listed seizures and lupus as plaintiff's primary and secondary diagnoses.  The RFC assessment indicated that plaintiff had no exertional limitations and that she should avoid all exposure to hazards and not climb ladders, ropes, or scaffolds due to her well-controlled seizure disorder.  The report dated April 1, 1999 by Dr. Weymonth, another state agency physician, listed seizures as the primary diagnosis and concluded that plaintiff had no exertional limitations but should avoided concentrated exposure to hazards.

In addition, the ALJ noted that no physician had indicated that plaintiff's physical or mental functions prevented her from work.  While not specifically referencing the

19

reports at this point in the decision, the ALJ had discussed numerous medical reports earlier in the decision that indicated that the plaintiff had no recurrence of seizures, stable lupus with muscle aches and joint pain but no systemic involvement, improvement in myalgias, no active joint inflammation, cessation of chest pain, treatment of depression with Prozac, and no limitations in remembering short, simple instructions and slight difficulty in interacting appropriately in interacting appropriately with the public, supervisors, and co-workers.

The ALJ was entitled to rely upon inconsistencies between the medical evidence and plaintiff's alleged severity of symptoms in assessing the extent and severity of plaintiff's subjective complaints. Craig v. Chater, 76 F.3d 585, 591, 595 (4th Cir. 1996) (quoting 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)) (The ALJ should "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [plaintiff's] statements and the rest of the evidence, including . . . statements by [plaintiff's] treating or examining physician or psychologist or other persons about how" the symptoms affect the plaintiff.). It is notable that in evaluating plaintiff's subjective complaints, the ALJ did not entirely discount plaintiff's allegations. The ALJ noted that no physician, including treating and state agency physicians, asserted that plaintiff had any exertional limitations due to any mental or physical condition; however, the ALJ concluded that plaintiff's conditions did not preclude her from performing requirements of sedentary work. The ALJ did not entirely discredit plaintiff's symptoms, but concluded that the medical evidence did not support plaintiff's claims as to the severity of the symptoms.

20

After a review of the record, the court finds the Magistrate did not err in finding that the ALJ's credibility analysis did not require reversal. This Court may properly review a credibility decision to determine whether it is supported by substantial evidence. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). The Magistrate Judge did not err in finding that substantial evidence supports the ALJ's determination that plaintiff's allegations of subjective symptoms were not entirely credible. Therefore, the court finds that the ALJ's failure to explicitly mention that plaintiff's conditions could cause her symptoms was harmless error and does not require reversal. Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted).

      4.     Plaintiff claims the Magistrate Judge erred in finding that the ALJ's failure to consider the side effects of medications did not require reversal.

Plaintiff's husband testified at the hearing before the ALJ that plaintiff's medications "have her all pulling from one place to another." He also testified, in the form of a hypothetical posed to the vocational expert, that plaintiff was inattentive for most of the time. The vocational expert responded that all of the jobs listed at the hearing would require concentration and attentiveness throughout the workday. Without specifically mentioning "side effects," the ALJ concluded that the medical evidence was inconsistent with the testimony of both the plaintiff and her husband. Plaintiff argues that

the ALJ's failure to specifically mention the side effects of plaintiff's medications constituted reversal error because the Commissioner failed to meet his burden in establishing a significant number of jobs in the economy that a person with plaintiff's limitations could perform.  Plaintiff's argument is without merit.

Although the ALJ did not specifically reference the negative side effects of plaintiff's medications, the ALJ did mention how medications improved or controlled plaintiff's impairments.  Furthermore, the ALJ noted that no physician had concluded that plaintiff's conditions prevented her from working and specifically referenced Dr. Plyer's report, dated September 16, 1998, which found that the plaintiff was "doing well."  While the ALJ did not specifically mention "side effects" in referring to Dr. Plyler's report, the medical report relied upon by the ALJ noted that plaintiff was tolerating her medications well.

Plaintiff asserts that the medical evidence confirms, not contradicts, the testimony, and she relies upon Dr. Plyler's record, dated May 6, 1998, which stated that plaintiff reported symptoms of nausea, dizziness, sleepiness, and confusion after her primary physician doubled the dosage of one of her medications.  However, this argument fails to note that during the same visit the plaintiff stated that "she had been doing well" on her prior medication regime, that she was unsure why the medication dosage had been changed, and that she thought her symptoms had occurred because she ran out of one of her other medications.  Dr. Plyer adjusted plaintiff's medication back to the previous regime.  In fact, the visit relied upon by the ALJ for the assertion that plaintiff was "doing well" was a follow-up visit to the one cited by plaintiff.

22

The ALJ is not required to accept unquestioningly all alleged side effects of medications; complaints of side effects may properly be discredited by inconsistent evidence.  See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (relying upon plaintiff's activities to discredit "allegedly disabling "'doped up' effect" of medication). After reviewing the record, the court finds that the Magistrate Judge did not err in concluding that the ALJ's failure to mention side effects did not constitute reversible error.   Substantial evidence supports the ALJ's finding that the severity of plaintiff's side effects from medications did not preclude her from performing sedentary work; therefore, the ALJ's failure to mention the negative side effects of plaintiff's medications was harmless error.  Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004).

Plaintiff also argues that the Magistrate erred in finding that the ALJ's limitations of unskilled, low stress, work adequately and appropriately accounted for any difficulties plaintiff would have in concentration and pace at work.  Because the court finds the ALJ's assessment is supported by substantial evidence, the court need not adopt the Magistrate Judge's conclusion that the ALJ's unskilled and low stress limitations adequately accounted for plaintiff's alleged side effects of medications.

5.    Plaintiff claims the Magistrate Judge erred in finding that the ALJ's allegedly deficient hypothetical constituted a harmless error.

In her objections, plaintiff asserted that reversal is warranted because the Commissioner failed to meet his burden in establishing that there are a significant number of jobs in the national community that plaintiff could perform.  Specifically, plaintiff argues that the hypothetical question posed to the vocational expert did not reflect her

condition because the ALJ failed to include the alleged limitations created by the side effects of her medications. The Magistrate Judge concluded that limiting plaintiff to unskilled, low stress work adequately and appropriately accounted for any difficulties that plaintiff would have in maintaining concentration pace at work.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989). As noted above, there is substantial evidence supporting the ALJ's conclusion that plaintiff's symptoms would not prevent her from performing sedentary work. As such, the court finds that the ALJ's hypothetical adequately and accurately reflected plaintiff's conditions and that the court need not adopt the Magistrate's conclusion that the ALJ's limitation to unskilled and low stress adequately accounted for plaintiff's alleged limitations due to side effects.

> 6.    Plaintiff claims the Magistrate Judge, like the ALJ, erred in failing to consider the combined effect of plaintiff's impairments.

In determining the effect of impairments upon a plaintiff's ability to work, the ALJ must consider the combined effect of both severe and nonsevere impairments. 20 C.F.R. § 416.945(e). Plaintiff asserts that both the Magistrate Judge and ALJ failed to properly consider the combined effect of plaintiff's impairments in determining whether plaintiff was disabled. Plaintiff's argument is without merit.

The record reflects that the ALJ considered the effects of each of plaintiff's impairments, both severe and nonsevere. In addition to plaintiff's seizure disorder, the ALJ assessed the effects of plaintiff's depression, I.Q., and subjective complaints upon

24

plaintiff's capacity to work.  Furthermore, contrary to plaintiff's argument, one of the two state agency physicians relied upon by the ALJ noted both seizure disorder and lupus as diagnoses.  The fact that the physician documented certain limitations due to seizures but did not note limitations due to lupus leads to the logical conclusion that the physician found no limitations due to lupus—not that the physician didn't evaluate the effects of lupus upon plaintiff's functional capacity to work.  These findings were not inconsistent with evaluations of other physicians who, as the ALJ noted, never asserted that plaintiff's impairments affected her ability to work.

After reviewing all of the evidence as a whole, the court finds that substantial evidence supports the ALJ's conclusion that plaintiff was not disabled by her impairments at the time of the initial cessation determination in January 1999.

IV.    Conclusion

After a thorough and careful review of the record, including the findings of the ALJ, the briefs from the plaintiff and the Commissioner, the Magistrate Judge's Report, and the plaintiff's objections thereto, the court find the Magistrate's Report provides an accurate summary of the facts in the instant case.  The court adopts the Report of the Magistrate Judge with the exception of the parts noted above and incorporates it herein by reference.  For the reasons set out hereinabove and in the Report of the Magistrate Judge, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

March 30, 2007                              s/ Joseph F. Anderson, Jr.
Columbia, South Carolina                    United States District Judge

25